1

2

3

4

5                     UNITED STATES DISTRICT COURT

6                     NORTHERN DISTRICT OF CALIFORNIA

7

8  CHARO OROSA,                              No. C-11-2143 EMC

9          Plaintiff,

10    v.                                      **ORDER GRANTING DEFENDANTS'
                                             MOTION TO DISMISS WITH LEAVE
                                             TO AMEND, AND DENYING**
11  THERAKOS, INC., *et al.*,                  **DEFENDANTS' MOTION TO STRIKE**

12         Defendants.                        **(Docket No. 19)**
   _____/

13

14                     I.    **INTRODUCTION**

15        Defendants' motion to dismiss and motion to strike portions of Plaintiff's first amended

16  complaint ("FAC") came on for hearing before the Court on August 19, 2011.  Docket No. 19.

17  Defendants have also filed a request for judicial notice that is pending before the Court.  Docket No.

18  20.  After considering the parties' submissions and oral argument, and for the reasons stated on the

19  record, the Court **GRANTS** Defendants' motion to dismiss with leave to amend and **DENIES**

20  Defendants' motion to strike.

21            II.    **FACTUAL AND PROCEDURAL BACKGROUND**

22        Plaintiff Charo Orosa filed suit against Defendants Therakos and Johnson & Johnson (J&J),

23  alleging employment discrimination, retaliation, and wrongful termination.  The FAC alleges as

24  follows.  Plaintiff was employed by Therakos between 2007 and April 29, 2010, as an Account

25  Manager responsible for selling Therakos products to physicians and medical institutions.  FAC,

26  Docket No. 14, ¶¶ 8, 9, 17.  She asserts that Therakos promoted "off-label" uses for its T-Cell

27  Lymphoma treatment devices ("instruments") by increasing Plaintiff's sales quotas to levels beyond

28  projections for approved uses, by altering the method for sales representatives to track sales data,

**United States District Court**
For the Northern District of California

1    and by discouraging sales representatives from communicating concerns in writing.  FAC ¶¶ 10, 11,

2    16.  Plaintiff claims that after expressing concerns regarding the apparent improper promotion of

3    "off-label" uses of Therakos's products, she was improperly disciplined, subjected to a hostile work

4    environment based on her sex, and ultimately terminated for pretextual reasons.  FAC ¶¶ 17, 28.

5    Plaintiff alleges three causes of action under California law: sex discrimination - disparate treatment

6    in violation of Cal. Govt. Code § 12900 *et seq.* ("FEHA"), FAC ¶¶ 18-25, failure to prevent

7    discrimination or harassment in violation of FEHA § 12940(k), FAC ¶¶ 26-30, and wrongful

8    termination in violation of public policy, FAC ¶¶ 31-35.  Her last cause of action incorporates

9    FEHA; the California Constitution, art. I; protection of employees who report violations of the

10   federal Food, Drug and Cosmetic Act, 21 U.S.C. § 331, *et seq.*; mail or wire fraud under RICO, 18

11   U.S.C. § 1961, *et seq.*; and unlawful or unfair business practices under Cal. Bus. & Prof. Code §

12   17200, *et seq.*  Plaintiff seeks $1,000,000 in general damages, as well as consequential and special

13   damages, punitive damages, and attorney's fees and costs.  FAC at 14.

14          With respect to J&J's status as Plaintiff's employer, the FAC alleges as follows.  A J&J

15   recruiter solicited and interviewed her for her initial position in 2004.  FAC ¶ 9.  The recruiter hired

16   her and placed her in one of the J&J "family" companies, Janssen Pharmaceuticals.  FAC ¶ 8.

17   Plaintiff's hiring paperwork was mostly done through J&J.  FAC ¶ 9.  After several years at Janssen,

18   J&J informed Plaintiff of a new opportunity at another of its companies, Therakos, and "arranged for

19   her 'transfer' there."  FAC ¶ 9.  J&J paid "a substantial portion of [her] incentive compensation and

20   benefits," including J&J stock and dividends, 401(k) benefits, health care plan, health account

21   reimbursement plan, and deductions for long term disability benefits.  FAC ¶ 6(1).  J&J also paid for

22   Plaintiff's business expenses directly, including her J&J company credit card and J&J business cell

23   phone account, and processed and approved her business receipts.  FAC ¶ 6(2).   J&J provided

24   Plaintiff with its policies, such as the "Johnson & Johnson Global Travel and Entertainment Policy,"

25   which governed her employment and eventual termination.  FAC ¶¶ 6(3), 17.  J&J also honored

26   Plaintiff for her years of service to J&J during the time of her direct employment under Therakos.

27   FAC ¶ 6(4).

28

**United States District Court**
For the Northern District of California

1      With respect to Therakos's relationship to J&J, Plaintiff alleges that Therakos is

2  insufficiently capitalized by J&J and cannot meet its regular business obligations on its own, which

3  is evidenced by the closure of its only "independent" office in Pennsylvania and the fact that J&J

4  provides for many of Therakos's financial obligations, including the employee benefits described

5  above.  FAC ¶ 7.  She alleges that Therakos is part of the J&J "family of companies," FAC ¶¶ 7, 8,

6  and that J&J "has a practice of freely moving, transferring, and reassigning high level managers

7  from among its allegedly separate companies that comprise its 'family,' to other such companies, in

8  the same manner as truly separate and independent companies might move, transfer, or reassign

9  managers within such a company."  FAC ¶ 7.  Plaintiff contends that these facts indicate that J&J

10  treats Therakos and its other companies "as effectively one large, integrated enterprise, controlled by

11  J&J in all material aspects."  FAC ¶ 7.

12      Defendants filed their first motion to dismiss on June 3, 2011.  Docket No. 5.  However, they

13  withdrew that motion when Plaintiff filed her first amended complaint.  Docket No. 16.  The current

14  motion to dismiss and motion to strike, Docket No. 19, is the first to be considered by the Court.

15                              **III.    DISCUSSION**

16  A.    Motion to Dismiss

17      Defendants argue that Plaintiff's FAC fails to state a plausible claim for relief under Rule 8.

18  Mot. at 2.  Specifically, they argue, the FAC does not plead sufficient facts from which a court could

19  conclude that J&J is her employer.  There are several theories of employment under which Plaintiff

20  may demonstrate that J&J is her employer along with Therakos: the joint or indirect employer

21  theory, the integrated enterprise theory, and the alter ego theory.  Defendants argue she has satisfied

22  none of them.  Rather, they contend, the FAC makes only conclusory allegations as to J&J's

23  employment relationship with Plaintiff and control over Therakos, and that it does not present

24  factual allegations supporting J&J's liability.  J&J therefore moves for dismissal under Rule

25  12(b)(6).  Mot. at 2.

26      "Federal Rule of Civil Procedure 8(a)(2) requires only a 'short and plain statement of the

27  claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what

28  the claim is and the grounds upon which it rests.'"  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544,

**United States District Court**
For the Northern District of California

1    554 (2007) (quoting Fed. R. Civ. P. 8(a)(2)).  A motion to dismiss under Rule 12(b)(6) tests the

2    sufficiency of a complaint or counterclaim, facilitating dismissal to the extent the pleading fails to

3    state a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6).  The pleading is construed

4    in the light most favorable to the non-moving party and all material allegations in it are taken to be

5    true.  *Sanders v. Kennedy*, 794 F.2d 478, 481 (9th Cir.1986).  However, even under the liberal

6    pleading standard of Federal Rule of Civil Procedure 8(a)(2), "a plaintiff's obligation to provide the

7    grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic

8    recitation of the elements of a cause of action will not do."  *Twombly*, 550 U.S. at 555 (citing

9    *Papasan v. Allain*, 478 U.S. 265, 286 (1986) (internal brackets and quotation marks omitted)).

10   Hence, the Court need not assume unstated facts, nor will it draw unwarranted inferences.  *Ashcroft*

11   *v. Iqbal*, 129 S. Ct. 1937, 1950 (2009) ("Determining whether a complaint states a plausible claim

12   for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial

13   experience and common sense."); *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009); *Sprewell*

14   *v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001) ("Nor is the court required to accept as

15   true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable

16   inferences.").

17          Under *Twombly*, a plaintiff (or counterclaimant) must not merely allege conduct that is

18   conceivable but must instead allege "enough facts to state a claim to relief that is plausible on its

19   face."  550 U.S. at 570.  "A claim has facial plausibility when the plaintiff pleads factual content that

20   allows the court to draw the reasonable inference that the defendant is liable for the misconduct

21   alleged."  *Iqbal*, 129 S. Ct. at 1949 (citing *Twombly*, 550 U.S. at 556).  "The plausibility standard is

22   not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant

23   has acted unlawfully. . . .  When a complaint pleads facts that are merely consistent with a

24   defendant's liability, it stops short of the line between possibility and plausibility of entitlement to

25   relief."  *Id.* (quoting *Twombly*, 550 U.S. at 556-57) (internal quotation marks omitted).  In sum, if the

26   facts alleged foster a reasonable inference of liability – stronger than a mere possibility – the claim

27   survives; if they do not, the claim must be dismissed.  *See Iqbal*, 129 S. Ct. at 1949-50.

28

**United States District Court**
For the Northern District of California

1      1.      J&J's Status as Plaintiff's employer

2      In the context of an employment discrimination claim under FEHA, Plaintiff is only

3 protected from improper discrimination at the hands of her "employer." *Vernon v. State of*

4 *California*, 116 Cal. App. 4th 114, 123 (2004) (citing Cal. Govt. Code § 12940; *Reno v. Baird*, 18

5 Cal. 4th 640, 644 (1998)). "FEHA requires 'some connection with an employment relationship,'

6 although the connection 'need not necessarily be direct.'" *Id.* (quoting *Lutcher v. Musicians Union*

7 *Local 47*, 633 F.2d 880, 883 (9th Cir. 1980)).[1]  Defendants argue that Plaintiff fails to plead

8 sufficient facts to show that J&J is her employer under any theory.

9      a.      Joint or Indirect Employment Relationship

10      To determine whether a plaintiff has alleged a joint or indirect employment relationship with

11 respect to a defendant, courts look to the "totality of circumstances that reflect upon the nature of the

12 work relationship of the parties, with emphasis upon the extent to which the defendant controls the

13 plaintiff's performance of employment duties." *Vernon*, 116 Cal. App. 4th at 124 (internal quotation

14 marks omitted) (citing *Lambertsen v. Utah Dept. Of Corrections*, 79 F.3d 1024, 1028 (10th Cir.

15 1996); *Jeffries v. Deloitte Touche Tohmatsu Int'l*, 893 F. Supp. 455, 459 (E.D. Pa. 1995)).  With

16 respect to an alleged joint employer, *Vernon* emphasizes that there is "no magic formula . . . .

17 Rather, the court must analyze myriad facts surrounding the employment relationship in question.

18 No one factor is decisive." *Id.* at 125 & n.7 (internal citations and quotation marks omitted)

19 (mentioning tests various courts use such as the agency test, the interference test, the economic

20 realities test, and the hybrid test but declining to use any one test to the exclusion of others).

21      In *Vernon*, a firefighter for the City of Berkeley filed suit for employment discrimination

22 under FEHA and alleged that, in addition to Berkeley, the State of California was his indirect or

23 joint employer. *Id.* at 117-18.  Addressing whether the State could be held liable as his employer,

24 the

25      [1] Because California courts have used cases analyzing the term "employer" under federal
26 Title VII and other antidiscrimination statutes, the Court refers to these cases interchangeably. *See Vernon*, 116 Cal. App. 4th at 125 n.6 ("Because the antidiscrimination objectives and relevant
27 wording of title VII of the Civil Rights Act of 1964 [and other federal antidiscrimination statutes] are similar to those of the FEHA, California courts often look to federal decisions interpreting these statutes for assistance in interpreting the FEHA.  We will do so here in defining the term
28 'employer.'") (internal citations omitted).

5

1    California Court of Appeal "examine[d] the totality of the working relationship of the

2    parties." *Id. at* 125 n.7.  The court offered the following summation:

3           Factors to be taken into account in assessing the relationship of the
            parties include payment of salary or other employment benefits and
4           Social Security taxes, the ownership of the equipment necessary to
            performance of the job, the location where the work is performed, the
5           obligation of the defendant to train the employee, the authority of the
            defendant to hire, transfer, promote, discipline or discharge the
6           employee, the authority to establish work schedules and assignments,
            the defendant's discretion to determine the amount of compensation
7           earned by the employee, the skill required of the work performed and
            the extent to which it is done under the direction of a supervisor,
8           whether the work is part of the defendant's regular business
            operations, the skill required in the particular occupation, the duration
9           of the relationship of the parties, and the duration of the plaintiff's
            employment.
10                  . . . .
            Of these factors, the extent of the defendant's right to control the
11          means and manner of the workers' performance is the most important.

12   *Id. at* 125-26 (internal citations and quotations omitted).  The *Vernon* court found that the plaintiff

13   had plead *none* of the above-described facts that would be sufficient to demonstrate an employment

14   relationship. *Id. at* 126.  The State did not hire him, pay him, maintain a personnel file on him, train

15   him, promote or transfer him, control policies or practices within his department (beyond state safety

16   regulations that applied to everyone), discipline or terminate him, or otherwise "interfere[] or

17   participat[e] . . . in the employment relationship." *Id. at* 126-27.  Because the plaintiff failed to

18   allege any of these factors, the court found that there was no allegation of "comprehensive and

19   immediate level of 'day-to-day' authority over employment decisions" that would render the State

20   liable under FEHA. *Id. at* 127-28 (quoting *Laird v. Capital Cities/ABC, Inc.*, 68 Cal. App. 4th727,

21   738 (1998)).

22         Applying *Vernon*, "[t]he key factor to consider in analyzing whether an entity is an employer

23   is the right to control and direct the activities of the person rendering service, or the manner and

24   method in which the work is performed." *Doe v. Wal-Mart*, 572 F.3d 677, 682 (9th Cir. 2009)

25   (quotations and quotation marks omitted).  Here, the critical question is whether Plaintiff has alleged

26   that J&J had the right to control the manner in which Plaintiff performed her work, especially with

27   respect to her alleged off-label promotion requirements, and whether J&J interfered in or controlled

28   her allegedly unlawful and pretextual termination for raising concerns about those requirements. *Cf.*

6

**United States District Court**

For the Northern District of California

1 *Anderson v. Pacific Maritime Ass'n*, 336 F.3d 924, 931 (9th Cir. 2003) (in summary judgment

2 context, holding that PMA was not plaintiff's employer even though it established the labor

3 contracts and "had some involvement in the grievance procedures" because it was the underlying

4 employer's responsibility to implement and enforce those procedures).

5      In this case, Plaintiff alleges that J&J hired her, transferred her, subjected her to its travel

6 expense policy (under which she was terminated), covered the costs of her business "equipment"

7 (company cellphone and credit card), paid all or virtually all of her non-salary benefits (including

8 401(k), healthcare, and incentive shares of J&J stock), and treated her as its employee for an

9 extended period of time, as evidenced by her awards for years of service to J&J.  However, the FAC

10 is lacking in facts that would establish true day-to-day control over "the manner and method in

11 which the work is performed." *Doe*, 572 F.3d at 682; *Cf. Smith v. Worldlink, Inc.*, No. CV 09-03631

12 DDP, 2009 WL 2365966, at *3 (C.D. Cal. Jul. 30, 2009) (finding that a plaintiff had sufficiently

13 pled an employment relationship where he alleged he reported directly to a Pro Staff employee who

14 potentially "had control over the manner and means of Plaintiff's reports," that he regularly provided

15 those reports to the employee and could be disciplined by the employee for reporting delays, that

16 such discipline led to his termination, and that his relationship with the Pro Staff employee

17 "continued throughout his period of employment").  While she describes J&J's involvement in her

18 hire and transfer, her descriptions of Therakos's allegedly unlawful acts directed toward her largely

19 do not mention J&J or its involvement and/or direction of that conduct.  *See* FAC ¶¶ 10, 11, 15-17.

20 Nor does she make any direct allegations with respect to J&J's role in her termination.  *See* FAC ¶¶

21 15-17; *Cf. Sibley Memorial Hospital v. Wilson*, 488 F.2d 1338, 1341-42 (D.C. Cir. 1973) (finding

22 hospital liable under Title VII even though private nurse was technically employed by patients,

23 because hospital ran the referral service, had power to "foreclose, on invidious grounds, access by

24 any individual to employment opportunities otherwise available to him," and "control[led] the

25 premises upon which those services were to be rendered"); *Assoc. Of Mexican-American Educators*

26 *v. State of California* ("*AMA*"), 231 F.3d 572 (9th Cir. 2000) (finding that the State was an indirect

27 employer of school teachers because "[t]he state's involvement is not limited to general legislative

28 oversight but, rather, affects the day-to-day operations of local public schools").

**United States District Court**
For the Northern District of California

1    Similarly, Plaintiff's allegations relating to J&J's control over Therakos are largely

2 conclusory under *Iqbal* and *Twombly*.  With the exception of J&J's ability to transfer managers, the

3 rest of Plaintiff's allegations amount to statements such as "defendant J&J exercised complete

4 control over all material aspects of defendant Therakos," FAC ¶ 5, and "Therakos is a division of

5 defendant J&J," FAC ¶ 8.  Plaintiff provides few details as to how J&J exercises this control.  *Cf.*

6 *Helm v. Alderwoods Group, Inc.*, 696 F. Supp. 2d 1057, 1073-74 (N.D. Cal. 2009) (denying motion

7 to dismiss where plaintiffs alleged that "SCI maintained control and authority, directly or indirectly,

8 over all functions at other SCI entities," that "SCI has the authority to create policies regarding

9 compensation and hours," that "it makes decisions concerning hiring and firing employees," and that

10 "SCI controlled plaintiffs' work schedules, rates and method of payment and benefits") (internal

11 quotation marks omitted).

12    Accordingly, Plaintiff has failed to allege that J&J is her joint or indirect employer.

13    2.    Alter Ego

14    In order to demonstrate that J&J was an alter ego of Therakos, Plaintiff must show that: "(1)

15 there is such unity of interest and ownership that the separate personalities of the corporation and the

16 individual no longer exist; and (2) that, if the acts are treated as those of the corporation alone, an

17 inequitable result will follow." *Baker v. Chin & Hensolt, Inc.*, No. 09-4168, 2010 U.S. Dist. Lexis

18 2195, at \*14 (N.D. Cal. Jan. 12, 2010) (quoting *Mesler v. Bragg Mgmt. Co.*, 39 Cal.3d 290, 300, 216

19 Cal. Rptr. 443, 702 P.2d 601 (1985) (internal quotation and citation omitted)).  "Factors that courts

20 have found militated towards finding alter ego liability include commingling of assets, treatment of

21 the assets of the corporation as the individual's own, failure to maintain corporate records,

22 employment of the same employees and attorneys, undercapitalization, and use of the corporation as

23 a shell for the individual." *Ontiveros v. Zamora*, No. CIV S-08-567, 2009 WL 425962, at \*7 (E.D.

24 Cal. Feb. 20, 2009) (citing *Assoc. Vendors, Inc. v. Oakland Meat Co., Inc.*, 210 Cal. App. 2d 825,

25 838-40 (1962)).  "Conclusory allegations of 'alter ego' status are insufficient to state a claim.

26 Rather, a plaintiff must allege specifically both of the elements of alter ego liability, as well as facts

27 supporting each." *Neilson v. Union Bank of California*, 290 F. Supp. 2d 1101, 1116 (C.D. Cal.

28 2003) (citations omitted).

8

**United States District Court**

For the Northern District of California

Here, Plaintiff's allegations are insufficient to satisfy either prong of the alter ego theory. She claims that Therakos closed its only independent office, that J&J covers much of Therakos's financial obligations, and that J&J moves managers around between the companies.  Beyond those claims, however, the remainder of her allegations are conclusory.  *Cf. Laguna v. Coverall N. Am., Inc.*, No. 09cv2131 JM(RBB), 2009 U.S. Dist. LEXIS 118098, at *7-9 (S.D. Cal. Dec. 18, 2009) (concluding that alter ego liability was facially plausible because "[t]he SAC alleges that Allied is the sole shareholder in Coverall and Coverall Cleaning Concepts, LLC; regularly removed cash and other assets from Coverall to minimize the ability of creditors to attach funds; did not respect normal corporate formalities (failed to keep corporate minutes and/or backdated such minutes); failed to contribute capital, issue stock, or otherwise complete the formation of these entities; and failed to provide adequate capital and operating funds"); *Lacey v. Malandro Commun., Inc.*, No. CV-09-01429-PHX-GMS, 2009 U.S. Dist. LEXIS 113993, at *16-18 (D. Ariz. Dec. 8, 2009) (concluding that alter ego liability was facially plausible because "[t]he amended complaint alleges that the Company is a shell corporation that was undercapitalized and that it does not possess sufficient assets to satisfy Plaintiff's judgment," "that Ms. Malandro is the sole and executive shareholder of the company and that she failed to maintain the requisite corporate formalities," and "that Ms. Malandro intentionally drained the Company of any assets, misused corporate funds to perform exclusively personal tasks, and misreported income to the Internal Revenue Service"); *Fund Raising v. Alaskans for Clean Water*, No. CV 09-4106 AHM (VBKx), 2009 U.S. Dist. LEXIS 106549, at *11-12 (C.D. Cal. Oct. 29, 2009) (concluding that *Twombly* and *Iqbal* standards were met where "[p]etitioner has alleged specific facts that indicate that 'separate personalities of the corporation and the individual no longer exist' – including that Gillam has commingled his assets with those of the corporations and that he has failed to observe corporate formalities").

Moreover, even if Plaintiff satisfies the first prong, she fails to plead any facts that would establish the second prong of the alter ego analysis.  Merely alleging that Plaintiff will suffer an inequitable result if J&J is not a defendant is not sufficient.  *Neilson*, 290 F. Supp. 2d at 1117 (pleading failed to allege injustice prong of alter ego theory where it stated that it would suffer an inequitable result but "fail[ed] to allege facts supporting this statement"); *Hibbs-Rines v. Seagate*

*Tech., LLC*, No. C 08-5430 SI, 2009 WL 513496, at *5 (N.D. Cal. 2009) ("[A] court is not bound to accept as true a legal conclusion couched as a factual allegation.") (quotation omitted). Moreover, the mere allegation that Therakos is undercapitalized is not enough to imply an unjust result. *See Virtualmagic Asia, Inc. v. Fil-Cartoons, Inc.*, 99 Cal. App. 4th 228, 245 (2002) ("[A]lter ego will not be applied absent evidence that an injustice would result from the recognition of separate corporate identities, and '[d]ifficulty in enforcing a judgment or collecting a debt does not satisfy this standard.'") (quoting *Sonora Diamond Corp. v. Superior Ct.*, 83 Cal. App. 4th 523, 539 (2000)). Accordingly, Plaintiff has failed to state a claim under an alter ego theory.

3.      Leave to Amend

The Federal Rules mandate that leave to amend should be liberally granted, especially at this early stage in the proceedings. Fed. R. Civ. P. 15(a); *see Hibbs-Rines v. Seagate Tech., LLC*, No. C 08-5430 SI, 2009 WL 513496, at *5 (N.D. Cal. 2009) (granting defendant's motion to strike joint employer allegations with leave to amend where plaintiff failed to allege any facts in support of her claim that she was jointly employed by defendants). Therefore, the Court grants Plaintiff leave to amend her complaint to adequately state a claim against Defendant J&J.

B.      Motion to Strike

Defendants also move to strike portions of Plaintiff's FAC. Rule 12(f) permits a court to strike "from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). However, "[m]otions to strike generally will not be granted unless it is clear that the matter to be stricken could not have any possible bearing on the subject matter of the litigation." *In re Facebook PPC Advertising Litigation*, 709 F. Supp. 2d 762, 773 (N.D. Cal. 2010) (citing *LeDuc v. Kentucky Central Life Insurance Co.*, 814 F. Supp. 820, 830 (N.D. Cal. 1992)). "Evidentiary allegations are not usually proper pleading, but allegations supplying background or historical material or other matter of an evidentiary nature will not be stricken unless unduly prejudicial to defendant." *LeDuc*, 814 F. Supp. at 830 (citing *Fuchs Sugar & Syrups, Inc. v. Amstar Corp.*, 402 F. Supp. 636, 637-638 (S.D.N.Y. 1975)). "Where allegations, when read with the complaint as a whole, give a full understanding thereof, they need not be stricken." *Id*. "Ultimately, whether to grant a motion to strike lies within the sound discretion of the

**United States District Court**

For the Northern District of California

1  district court." *Neilson v. Union Bank of California, N.A.*, 290 F. Supp. 2d 1101, 1152 (C.D. Cal.

2  2003) (citing *Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1528 (9th Cir. 1993)).

3        While much of the challenged portions of Plaintiff's complaint may end up being

4  inadmissible at trial, at this point it is difficult for the Court to conclude that they "could not have

5  any possible bearing on the subject matter of the litigation." *Facebook*, 709 F. Supp. 2d at 773; *see*

6  *also New York City Employees' Retirement System v. Berry*, 667 F. Supp. 2d 1121, 1128 (N.D. Cal.

7  2009) ("Where the moving party cannot adequately demonstrate [] prejudice, courts frequently deny

8  motions to strike 'even though the offending matter literally [was] within one or more of the

9  categories set forth in Rule 12(f).'") (quoting *Rivers v. County of Marin*, No. C 05-4251 SI, 2006

10  WL 581096, at \*2 (N.D. Cal. March 7, 2006)).  The Court therefore **DENIES** Defendants' motion to

11  strike without prejudice to any future objections Defendants may raise.

12  C.      Request for Judicial Notice

13        Defendants request that the Court take judicial notice of the articles of incorporation of

14  Therakos, Inc, which is available from the Florida Department of State.  Docket No. 20.  Plaintiff

15  has not indicated an opposition to Defendants' request, and the document is "capable of accurate and

16  ready determination by resort to sources whose accuracy cannot reasonably be questioned."  Fed. R.

17  Evid. 201(b)(2).  Therefore, the Court **GRANTS** the request.

18        This disposes of Docket Nos. 19 and 20.

19

20        IT IS SO ORDERED.

21

22  Dated:  August 22, 2011

23  _____

24  EDWARD M. CHEN
    United States District Judge

25

26

27

28

11